*570 Chief Justice Roberts
delivered the opinion of the Court.
Accidents happen. Sometimes they happen to individuals committing crimes with loaded guns. The question here is whether extra punishment Congress imposed for the discharge of a gun during certain crimes applies when the gun goes off accidentally.
I
Title 18 U. S. C. § 924(c)(1)(A) criminalizes using or carrying a firearm during and in relation to any violent or drug trafficking crime, or possessing a firearm in furtherance of such a crime. An individual convicted of that offense receives a 5-year mandatory minimum sentence, in addition to the punishment for the underlying crime. § 924(c)(l)(A)(i). The mandatory minimum increases to 7 years “if the firearm is brandished” and to 10 years “if the firearm is discharged.” §§ 924(c)(l)(A)(ii), (iii).
In this case, a masked man entered a bank, waved a gun, and yelled at everyone to get down. He then walked behind the teller counter and started removing money from the teller stations. He grabbed bills with his left hand, holding the gun in his right. At one point, he reached over a teller to remove money from her drawer. As he was collecting the money, the gun discharged, leaving a bullet hole in the partition between two stations. The robber cursed and dashed out of the bank. Witnesses later testified that he seemed surprised that the gun had gone off. No one was hurt. App. 16-19, 24, 27, 47-48, 79.
Police arrested Christopher Michael Dean and Ricardo Curtis Lopez for the crime. Both defendants were charged with conspiracy to commit a robbery affecting interstate commerce, in violation of 18 U. S. C. § 1951(a), and aiding and abetting each other in using, carrying, possessing, and discharging a firearm during an armed robbery, in violation of § 924(c)(l)(A)(iii) and §2. App. 11-12. At trial, Dean admitted that he had committed the robbery, id., at 76-81, and *571 a jury found him guilty on both the robbery and firearm counts. The District Court sentenced Dean to a mandatory minimum term of 10 years in prison on the firearm count, because the firearm “discharged” during the robbery. § 924(c)(1)(A)(iii); App. 136.
Dean appealed, contending that the discharge was accidental, and that the sentencing enhancement in § 924(c)(l)(A)(iii) requires proof that the defendant intended to discharge the firearm. The Court of Appeals affirmed, holding that separate proof of intent was not required. 517 F. 3d 1224, 1229 (CA11 2008). That decision created a conflict among the Circuits over whether the accidental discharge of a firearm during the specified crimes gives rise to the 10-year mandatory minimum. See United States v. Brown, 449 F. 3d 154 (CADC 2006) (holding that it does not). We granted certiorari to resolve that conflict. 555 U. S. 1028 (2008).
II
Section 924(e)(1)(A) provides:
“[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
“(i) be sentenced to a term of imprisonment of not less than 5 years;
“(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
“(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.”
The principal paragraph defines a complete offense and the subsections “explain how defendants are to ‘be sentenced.’ ” Harris v. United States, 536 U. S. 545, 552 (2002). Subsection (i) “sets a catchall minimum” sentence of not less than *572 five years. Id., at 552-553. Subsections (ii) and (iii) increase the minimum penalty if the firearm “is brandished” or “is discharged.” See id., at 553. The parties disagree over whether § 924(c)(l)(A)(iii) contains a requirement that the defendant intend to discharge the firearm. We hold that it does not.
A
“We start, as always, with the language of the statute.” Williams v. Taylor, 529 U. S. 420, 431 (2000). The text of subsection (iii) provides that a defendant shall be sentenced to a minimum of 10 years “if the firearm is discharged.” It does not require that the discharge be done knowingly or intentionally, or otherwise contain words of limitation. As we explained in Bates v. United States, 522 U. S. 23 (1997), in declining to infer an “Intent to defraud’” requirement into a statute, “we ordinarily resist reading words or elements into a statute that do not appear on its face.” Id., at 29.
Congress’s use of the passive voice further indicates that subsection (iii) does not require proof of intent. The passive voice focuses on an event that occurs without respect to a specific actor, and therefore without respect to any actor’s intent or culpability. Cf. Watson v. United States, 552 U. S. 74, 81 (2007) (use of passive voice in statutory phrase “to be used” in 18 U. S. C. § 924(d)(1) reflects “agnosticism ... about who does the using”). It is whether something happened— not how or why it happened — that matters.
The structure of the statute also suggests that subsection (iii) is not limited to the intentional discharge of a firearm. Subsection (ii) provides a 7-year mandatory minimum sentence if the firearm “is brandished.” Congress expressly included an intent requirement for that provision, by defining “brandish” to mean “to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person.” § 924(c)(4) (emphasis added). The defendant must have in *573 tended to brandish the firearm, because the brandishing must have been done for a specific purpose. Congress did not, however, separately define “discharge” to include an intent requirement. “[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.” Russello v. United States, 464 U. S. 16, 23 (1983) (internal quotation marks omitted).
Dean argues that the statute is not silent on the question presented. Congress, he contends, included an intent element in the opening paragraph of § 924(c)(1)(A), and that element extends to the sentencing enhancements. Section 924(c)(1)(A) criminalizes using or carrying a firearm “during and in relation to” any violent or drug trafficking crime. In Smith v. United States, 508 U. S. 223 (1993), we stated that the phrase “in relation to” means “that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.” Id., at 238. Dean argues that the adverbial phrase thus necessarily embodies an intent requirement, and that the phrase modifies all the verbs in the statute — not only use, carry, and possess, but also brandish and discharge. Such a reading requires that a perpetrator knowingly discharge the firearm for the enhancement to apply. If the discharge is accidental, Dean argues, it is not “in relation to” the underlying crime.
The most natural reading of the statute, however, is that “in relation to” modifies only the nearby verbs “uses” and “carries.” The next verb — “possesses”—is modified by its own adverbial clause, “in furtherance of.” The last two verbs — “is brandished” and “is discharged” — appear in separate subsections and are in a different voice than the verbs in the principal paragraph. There is no basis for reading “in relation to” to extend all the way down to modify “is discharged.” The better reading of the statute is that the *574 adverbial phrases in the opening paragraph — “in relation to” and “in fiirtherance of” — modify their respective nearby verbs, and that neither phrase extends to the sentencing factors.
But, Dean argues, such a reading will lead to absurd results. The discharge provision on its face contains no temporal or causal limitations. In the absence of an intent requirement, the enhancement would apply “regardless of when the actions occur, or by whom or for what reason they are taken.” Brief for Petitioner 11-12. It would, for example, apply if the gun used during the crime were discharged “weeks (or years) before or after the crime.” Reply Brief for Petitioner 11.
We do not agree that implying an intent requirement is necessary to address such concerns. As the Government recognizes, sentencing factors such as the one here “often involve . . . special features of the manner in which a basic crime was carried out.” Brief for United States 29 (quoting Harris, 536 U. S., at 553; internal quotation marks omitted). The basic crime here is using or carrying a firearm during and in relation to a violent or drug trafficking crime, or possessing a firearm in furtherance of any such crime. Fanciful hypotheticals testing whether the discharge was a “special featur[e]” of how the “basic crime was carried out,” id., at 553 (internal quotation marks omitted), are best addressed in those terms, not by contorting and stretching the statutory language to imply an intent requirement.
B
Dean further argues that even if the statute is viewed as silent on the intent question, that silence compels a ruling in his favor. There is, he notes, a presumption that criminal prohibitions include a requirement that the Government prove the defendant intended the conduct made criminal. In light of this presumption, we have “on a number of occasions read a state-of-mind component into an offense even *575 when the statutory definition did not in terms so provide.” United States v. United States Gypsum Co., 438 U. S. 422, 437 (1978). “[S]ome indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime.” Staples v. United States, 511 U. S. 600, 606 (1994).
Dean argues that the presumption is especially strong in this case, given the structure and purpose of the statute. In his view, the three subsections are intended to provide harsher penalties for increasingly culpable conduct: a 5-year minimum for using, carrying, or possessing a firearm; a 7-year minimum for brandishing a firearm; and a 10-year minimum for discharging a firearm. Incorporating an intent requirement into the discharge provision is necessary to give effect to that progression, because an accidental discharge is less culpable than intentional brandishment. See Brown, 449 F. 3d, at 156.
It is unusual to impose criminal punishment for the consequences of purely accidental conduct. But it is not unusual to punish individuals for the unintended consequences of their unlawful acts. See 2 W. LaFave, Substantive Criminal Law §14.4, pp. 436-437 (2d ed. 2003). The felony-murder rule is a familiar example: If a defendant commits an unintended homicide while committing another felony, the defendant can be convicted of murder. See 18 U. S. C. §1111. The Sentencing Guidelines reflect the same principle. See United States Sentencing Commission, Guidelines Manual §2A2.2(b)(3) (Nov. 2008) (USSG) (increasing offense level for aggravated assault according to the seriousness of the injury); § 2D2.3 (increasing offense level for operating or directing the operation of a common carrier under the influence of alcohol or drugs if death or serious bodily injury results).
Blackstone expressed the idea in the following terms:
“[I]f any accidental mischief happens to follow from the performance of a lawful act, the party stands excused *576 from all guilt: but if a man be doing any thing unlawful, and a consequence ensues which he did not foresee or intend, as the death of a man or the like, his want of foresight shall be no excuse; for, being guilty of one of-fence, in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequence may follow the first misbehaviour.” 4 W. Blackstone, Commentaries on the Laws of England 26-27 (1769).
Here the defendant is already guilty of unlawful conduct twice over: a violent or drug trafficking offense and the use, carrying, or possession of a firearm in the course of that offense. That unlawful conduct was not an accident. See Smith, 508 U. S., at 238.
The fact that the actual discharge of a gun covered under §924(c)(l)(A)(iii) may be accidental does not mean that the defendant is blameless. The sentencing enhancement in subsection (iii) accounts for the risk of harm resulting from the manner in which the crime is carried out, for which the defendant is responsible. See Harris, supra, at 553. An individual who brings a loaded weapon to commit a crime runs the risk that the gun will discharge accidentally. A gunshot in such circumstances — whether accidental or intended — increases the risk that others will be injured, that people will panic, or that violence (with its own danger to those nearby) will be used in response. Those criminals wishing to avoid the penalty for an inadvertent discharge can lock or unload the firearm, handle it with care during the underlying violent or drug trafficking crime, leave the gun at home, or — best yet — avoid committing the felony in the first place.
Justice Stevens contends that the statute should be read to require a showing of intent because harm resulting from a discharge may be punishable under other provisions, such as the Sentencing Guidelines (but only if “bodily injury” results). Post, at 583 (dissenting opinion) (citing USSG §2B3.1(b)(3)). But Congress in § 924(c)(l)(A)(iii) elected to impose a mandatory term, without regard to more generally *577 applicable sentencing provisions. Punishment available under such provisions therefore does not suggest that the statute at issue here is limited to intentional discharges.
And although the point is not relevant under the correct reading of the statute, it is wrong to assert that the gunshot here “caused no harm.” Post, at 578. By pure luck, no one was killed or wounded. But the gunshot plainly added to the trauma experienced by those held during the armed robbery. See, e. g., App. 22 (the gunshot “shook us all”); ibid. (“Melissa in the lobby popped up and said, ‘oh, my God, has he shot Nora?’ ”).
C
Dean finally argues that any doubts about the proper interpretation of the statute should be resolved in his favor under the rule of lenity. See Brief for Petitioner 6. “The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.” Muscarello v. United States, 524 U. S. 125, 138 (1998); see also Smith, supra, at 239 (“The mere possibility of articulating a narrower construction, however, does not by itself make the rule of lenity applicable”). “To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.” Muscarello, supra, at 138-139 (internal quotation marks omitted). In this case, the statutory text and structure convince us that the discharge provision does not contain an intent requirement. Dean’s contrary arguments are not enough to render the statute grievously ambiguous.
* * *
Section 924(c)(l)(A)(iii) requires no separate proof of intent. The 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident. The judgment of the Court of Appeals for the Eleventh Circuit is affirmed.

It is so ordered.