THE STATE OF OHIO, APPELLANT, *v.* LESTER, APPELLEE.

[Cite as *State v. Lester,* 123 Ohio St.3d 396, 2009-Ohio-4225.]

*Criminal law — Defective indictment — R.C. 2911.01(A)(1) — Aggravated robbery — Mens rea — Strict liability.*

(No. 2008-1725 — Submitted April 21, 2009 — Decided August 27, 2009.)

APPEAL from the Court of Appeals for Hamilton County, No. C-070383, 2008-Ohio-3570.

_____

CUPP, J.

{¶ 1}   The issue before us is whether, in the crime of aggravated robbery in violation of R.C. 2911.01(A)(1), the element of brandishing, displaying, using, or indicating possession of a deadly weapon has a mens rea of recklessness, or whether strict liability is imposed with regard to that element.  We conclude that R.C. 2911.01(A)(1) imposes strict liability for that element. Consequently, we reverse the court of appeals' judgment.

**I**

*A*

{¶ 2}   James Lester and an unnamed accomplice stole money from three different men by drawing the victims into playing three-card monte.  One of the victims ("victim two") became suspicious and asked to see the bag that supposedly contained the players' money. (At the start of the game, the players, including the victim, put their money in a paper bag ostensibly held for the winner of the game.) The bag that victim two saw turned out to be empty. Lester fled. Victim two then realized that a bank envelope containing $1,800, which had been in a briefcase near where Lester was sitting, was gone.

**{¶ 3}** Victim two chased Lester. Lester then pulled out a knife, showed it to victim two, and said to him: "I know how to use this knife and I will cut you." Victim two tried to dial 9-1-1 on his cell phone to get help, but Lester grabbed the phone from his hand. Victim two gave chase, and some young boys helped him get the cell phone back. Lester escaped in a car with Tennessee license plates. Victim two identified the car, and the police apprehended Lester.

**{¶ 4}** Lester was charged with aggravated robbery in violation of R.C. 2911.01(A)(1) and robbery, based on the theft of money from victim two, and two counts of theft from the elderly based on two other incidents.

**{¶ 5}** The jury convicted Lester of aggravated robbery, robbery, and the two counts of theft from the elderly. The trial court merged the count for robbery into the count for aggravated robbery before sentencing.

*B*

**{¶ 6}** On appeal, the First District Court of Appeals reversed Lester's aggravated-robbery conviction based on its conclusion that Lester's indictment was defective for failing to allege a mens rea element for the aggravated-robbery charge. *State v. Lester,* 1st Dist. No. C070383, 2008-Ohio-3570, ¶ 21, 23. The issue whether Lester's indictment for aggravated robbery was defective because it omitted a mens rea element was raised for the first time on appeal. Under the usual rule, errors not timely raised in the trial court are subject to review only for plain error. Crim.R. 52(B).

**{¶ 7}** Pursuant to this court's decision in *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ("*Colon I*"), however, the First District held that Lester's conviction was subject to automatic reversal because the indictment's failure to specify a mens rea element for aggravated robbery was structural error.[1] *Lester*, 2008-Ohio-3570, ¶ 20-24. The First District noted: "In

---

1. The indictment charged Lester with aggravated robbery: "JAMES LESTER, on or about the 24th day of October in the year Two Thousand and Six * * *, in committing or attempting to

2

this case, the trial court correctly instructed the jury on what would have been the proper mens rea element, i.e., knowingly, had that element not been omitted in the indictment. But under *Colon [II]* this was without consequence because at inception the defective indictment tainted the entire process." Id. at ¶ 21. The First District's reference to "knowingly" was to the mens rea element for the theft, which was an element of the aggravated-robbery offense. The appellate court did not identify recklessness as the mens rea required in displaying or brandishing the deadly weapon.

**{¶ 8}** The First District's decision preceded by two weeks this court's decision on reconsideration in *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("*Colon II*"), which clarified *Colon I*: "In a defective-indictment case that does not result in multiple errors that are inextricably linked to the flawed indictment such as those that occurred in *Colon I*, structural-error analysis would not be appropriate." Id. at ¶ 7. This court in *Colon II* noted that not only was the indictment in that case defective for failure to state the mens rea element of "recklessness," the trial court had not instructed the jury on recklessness as the applicable mens rea. Id. at ¶ 6. When the only error was the omission of the applicable mens rea from the indictment, traditional concepts of plain error would apply. Id. at ¶ 6-7.

**{¶ 9}** The state appealed the First District's decision, and we accepted review of its sole proposition of law. *State v. Lester,* 120 Ohio St.3d 1416, 2008-Ohio-6166, 897 N.E.2d 652. The state's proposition of law asserts: "There is no distinction, for the purpose of assigning a mens rea element, between the acts of

---

commit a theft offense, as defined in section 2913.01 of the Revised Code, to wit: THEFT OF UNITED STATES CURRENCY BELONGING TO [victim two], or in fleeing immediately thereafter, had a deadly weapon on or about his person or under his control, and displayed, brandished, indicated possession or used the deadly weapon, to wit: A KNIFE, in violation of Section 2911.01(A)(1) of the Ohio Revised Code* * *."

possessing or controlling a deadly weapon during a theft and brandishing, displaying, using or indicating possession of a deadly weapon during a theft."

## II

{¶ 10} The parties disagree whether the state is required to charge any mens rea for the element of displaying, brandishing, indicating possession of, or using a deadly weapon in the aggravated-robbery statute. The state argues that the statute imposes strict liability for that element, and thus no mens rea must be charged, while Lester argues that the state must charge that a defendant acted recklessly. R.C. 2911.01 provides:

{¶ 11} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶ 12} "(1) *Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.*" (Emphasis added.)

{¶ 13} Ohio law requires that for one to be found guilty of an offense, "[t]he person [must have] the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." R.C. 2901.21(A)(2). R.C. 2901.21(B) then provides:

{¶ 14} "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

{¶ 15} R.C. 2911.01(A)(1) does not specify a degree of culpability, or a mens rea. The question here, then, is whether the General Assembly plainly indicated a purpose to impose strict liability for the conduct of displaying or using

4

a deadly weapon, or whether recklessness is sufficient culpability for that element of the offense of aggravated robbery under R.C. 2911.01(A)(1).

*A*

{¶ 16} The indictment against Lester did not specify a mens rea for the element of brandishing, displaying, using, or indicating possession of a deadly weapon during the theft offense. As noted above, *Colon II* clarified that the omission of the mens rea element from an indictment does not require automatic reversal if the trial court properly instructs the jury. The trial court in this case did not instruct the jury that the element of brandishing, displaying, or using a deadly weapon during a theft offense requires a specific level of culpability, although the trial court did instruct the jury that it must find that Lester knowingly committed theft.

{¶ 17} The state's failure to specify the mens rea in the indictment and the failure to instruct the jury on the mens rea for the element of brandishing, displaying, using, or indicating possession of a deadly weapon constitute error only if a specific level of culpability is required for the element. By contrast, if R.C. 2911.01(A)(1) imposes strict liability for the element, then the court of appeals erred in reversing Lester's conviction.

*B*

{¶ 18} In answering the question whether the aggravated-robbery statute, R.C. 2911.01(A)(1), "plainly impose[s] strict liability" with regard to the element of brandishing, displaying, using, or indicating possession of a deadly weapon, we must consider what we have previously said about the mens rea applicable to similar statutes.

1.

{¶ 19} In *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172, paragraph one of the syllabus, this court held that "[t]he deadly weapon element of R.C. 2911.02(A)(1) * * * does not require the *mens rea* of recklessness." In

*Wharf*, the defendant was charged with robbery in violation of R.C. 2911.02(A)(1), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control." *Wharf*, 86 Ohio St.3d at 376, 715 N.E.2d 172. Wharf had requested an instruction that would have required the jury to find that he acted recklessly in possessing a deadly weapon during the offense, but the trial court declined to give the instruction.

{¶ 20} This court concluded that "by employing language making mere possession or control of a deadly weapon, as opposed to actual use or intent to use, a violation, it is clear to us that the General Assembly intended that R.C. 2911.02(A)(1) be a strict liability offense." Id. at 378, 715 N.E.2d 172. The element of having a deadly weapon in one's possession or under one's control under R.C. 2911.02(A)(1)—an element identical to the first part of R.C. 2911.01(A)(1)—does not, therefore, require that a defendant act with a specific intent.

{¶ 21} In *Wharf*, this court also noted in dicta that "no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary according to the plain language of [R.C. 2911.02(A)(1)]." Id. Lester and his amicus curiae rely on this dicta in *Wharf* to support their argument that a defendant must act recklessly in displaying or brandishing a deadly weapon under R.C. 2911.01(A)(1).

{¶ 22} As the amicus curiae, the public defender, points out, the aggravated-robbery statute at issue here was amended in 1996 to add the language "display the weapon, brandish it, indicate that the offender possesses it, or use it." Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, 7278. The public defender argues that the additional language in the current aggravated-robbery statute suggests that the General Assembly intended to require that a defendant act with a

specific intent to display the deadly weapon. Lester and the public defender point to *Wharf* to support that argument.

{¶ 23} The state argues that *Wharf*'s rationale applies to the aggravated-robbery statute and shows that the General Assembly did not impose a specific mens rea for the display or brandishing of a weapon under R.C. 2911.01(A)(1). The court in *Wharf* observed that " '[m]erely *having* the weapon is the potentially dangerous factual condition warranting the more severe penalty.* * *' (Emphasis in original.)" 86 Ohio St.3d at 379, 715 N.E.2d 172, quoting *State v. Edwards* (1976), 50 Ohio App.2d 63, 67, 4 O.O.3d 44, 361 N.E.2d 1083. The state also argues that there is little difference between having a weapon in one's control and displaying it and that the risk of harm to the victim in either case is elevated because of the presence of the weapon.

2.

{¶ 24} The statute's amendment in 1996 to add language requiring a defendant to brandish or display a deadly weapon in addition to the strict-liability requirement of possession and control of the deadly weapon does not establish that the General Assembly intended to require a specific mental element. A defendant's brandishing or displaying a deadly weapon elevates the risk to others in the vicinity of the robbery above the risk posed only by the possession or control of the deadly weapon. Cf. *Wharf*, 86 Ohio St.3d at 379, 715 N.E.2d 172.

{¶ 25} The statute here is distinguishable from the one at issue in *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, ¶ 27. In that case, we held that for the purpose of proving the offense of having a weapon while under a disability pursuant to R.C. 2923.13(A)(3), the state had to show that the defendant acted recklessly with regard to his awareness that he was under indictment. 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, at syllabus. In *Clay*, we concluded that while the mere possession of a firearm was not unlawful, the additional fact of being under indictment made the act of possession

criminal. When the additional fact makes innocent conduct criminal, as in *Clay*, it is unlikely that the General Assembly "plainly intended" to impose strict liability. By contrast, committing a theft offense is not innocent conduct. Consequently, it is reasonable that the General Assembly would impose strict liability on the additional circumstance of brandishing, displaying, using, or indicating possession of a deadly weapon, activity that enhances the seriousness of the criminal activity (from robbery, a second-degree felony, R.C. 2911.02(A)(1), to aggravated robbery, a first-degree felony, R.C. 2911.01(A)(1)).

{¶ 26} Because this court has recognized that mens rea is not required for the possession or control of a deadly weapon by a defendant in committing a robbery, *Wharf*, 86 Ohio St.3d 375, 715 N.E.2d 172, it would be an anomaly to construe R.C. 2911.01(A)(1) to require proof of recklessness. Cf. R.C. 1.47(C) (in enacting a statute, it is presumed that a just and reasonable result is intended).

3.

{¶ 27} As in *Wharf*, the risk of harm in this case "quickly escalated due, in large measure, to a deadly weapon being readily accessible" to the defendant. 86 Ohio St.3d at 380, 715 N.E.2d 172. When the victim pursued Lester to get his money back, Lester pulled out a knife and said, "I know how to use this knife and I will cut you." The use of the knife to threaten the victim "was not a case of neglect, innocent mistake, or pure accident." Id.

{¶ 28} From the victim's perspective, or for that matter, from a bystander's perspective, the risk of harm increases when a defendant brandishes or displays the weapon. Cf. *Dean v. United States* (2009), ___ U.S. ___, 129 S.Ct. 1849, 1855, 173 L.Ed.2d 785 (when defendant carried a firearm during a robbery, the fact that the discharge of the gun may have been accidental "does not mean that the defendant is blameless" for purposes of sentence enhancement). It is rational to conclude that the General Assembly imposed strict liability in R.C.

2911.01(A)(1) for the brandishing, display, or use-of-a-deadly-weapon element in an aggravated robbery.

4.

{¶ 29} Lester argues that under *Colon I*, the state must show that a defendant recklessly brandished, displayed, indicated possession of, or used the deadly weapon to prove a violation of the aggravated-robbery statute, R.C. 2911.01(A)(1). However, in *Colon I,* there was "no dispute" that the defendant's indictment for robbery in violation of R.C. 2911.02(A)(2) was defective for failure to allege a mens rea. 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, ¶ 10. "[T]he state agree[d] that the omission in the indictment of one of the essential elements of the crime of robbery," i.e., the mens rea, rendered the indictment defective. Id. at ¶ 15. This court concluded that R.C. 2911.02(A)(2) did not "plainly indicate[ ] a purpose to impose strict liability." Id. at ¶ 12.

{¶ 30} Moreover, *Colon I* is not dispositive of the issue here. This case addresses the defendant's use, display, brandishing, or indicating possession of a deadly weapon under R.C. 2911.01(A)(1), unlike *Colon I*, which addressed the element of inflicting or threatening to inflict physical harm under R.C. 2911.02(A)(2). Additionally, as previously noted, the parties in *Colon I* did not contest the issue of whether R.C. 2911.02(A)(2) required a mens rea, and this court's discussion of that issue in *Colon I* consequently was limited.

{¶ 31} And contrary to the suggestion in *State v. Jones*, 7th Dist. No. 07-MA-200, 2008-Ohio-6971, this court's summary reversal and remand order on authority of *Colon I* in *State v. Davis*, 119 Ohio St.3d 113, 2008-Ohio-3879, 892 N.E.2d 446, does not foreclose the conclusion we reach today regarding the aggravated-robbery statute. *Davis* involved an indictment for aggravated robbery under R.C. 2911.01(A)(1). Although the court of appeals' opinion in *Davis* stated that the indictment did not specifically state a mens rea, the court of appeals' opinion did not state what the omitted mens rea element was. See *State v. Davis*,

8th Dist. No. 88895, 2007-Ohio-5843, ¶ 34-38. Our two-sentence ruling in *Davis* did not follow full briefing and argument, but it simply reversed and remanded without discussing whether aggravated robbery under R.C. 2911.01(A)(1) required a mens rea with regard to the element of brandishing, display, use, or indicating possession of a weapon. *Davis* does not prevent us from considering this issue after full briefing and argument and reaching the conclusion we announce today regarding the aggravated-robbery statute. See, e.g., *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 9-10, 12 (summary-remand decision of this court does not settle for future cases unaddressed issues); see also *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 46. To the extent that our summary-reversal decision in *Davis* can be read as implicitly establishing a mens rea requirement for the element of brandishing, displaying, using, or indicating possession of a weapon in the aggravated robbery statute, R.C. 2911.01(A)(1), we reject that conclusion.

{¶ 32} We are persuaded that the General Assembly, by not specifying a mens rea in R.C. 2911.01(A)(1), plainly indicated its purpose to impose strict liability as to the element of displaying, brandishing, indicating possession of, or using a deadly weapon. Cf. R.C. 2901.21(B).

### III

{¶ 33} We hold that the state is not required to charge a mens rea for this element of the crime of aggravated robbery under R.C. 2911.01(A)(1).

{¶ 34} We reverse the judgment below and reinstate Lester's conviction.

Judgment reversed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in judgment only.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 35} This case comes to us courtesy of the quagmire created by *State v. Colon*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917 ("*Colon I*"), and *State v. Colon*, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("*Colon II*"). Previously, an indictment that tracked the statute would have been deemed sufficient to provide the notice that an accused needed to defend himself. *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162. Now, every indictment that does not specify the degree of culpability for each statutory element is subject to challenge for the first time on appeal. This is a boon to defendants, a headache to appellate courts, and a nightmare to prosecutors.

{¶ 36} And so the major question to be decided is the consequence of the missing mens rea in this indictment. I do not agree that the General Assembly has *plainly indicated* an intention to impose a standard of strict liability upon the element of brandishing, displaying, using, or indicating possession of a deadly weapon in an aggravated robbery charged under R.C. 2911.01(A)(1) and thus would hold that the mens rea of recklessness – the default culpability standard – applies. Nevertheless, I concur in the judgment to reverse the judgment of the court of appeals and reinstate Lester's conviction, although for altogether different reasons.

**The Purpose of an Indictment**

{¶ 37} The purpose of an indictment issued by a grand jury has always been to give notice to the accused: "[A] criminal offense must be charged with reasonable certainty in the indictment so as to apprise the defendant of that which he may expect to meet and be required to answer; so that the court and jury may know what they are to try, and the court may determine without unreasonable difficulty what evidence is admissible." *Horton v. State* (1911), 85 Ohio St. 13, 19, 96 N.E. 797.

{¶ 38} As recently as in *State v. Buehner*, 110 Ohio St.3d 403, 2006-Ohio-4707, 853 N.E.2d 1162, we explained:

{¶ 39} " 'Under Crim.R. 7(B), an indictment "may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement *may be in the words of the applicable section of the statute, provided the words of that statute charge an offense*, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."

{¶ 40} " 'An indictment meets constitutional requirements if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' ' " Id. at ¶ 8-9, quoting *State v. Childs* (2000), 88 Ohio St.3d 558, 564-565, 728 N.E.2d 379, quoting *Hamling v. United States* (1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887, 41 L.Ed.2d 590.

{¶ 41} Until *Colon I* and *II*, the typical indictment that recited the language of a criminal statute as written was presumed to give appropriate notice to the accused of the charge that was to be defended against. Furthermore, if a question existed, a bill of particulars could be requested, and a motion to amend the indictment could always be filed under Crim.R. 7(D).

### The *Colon* Complications

{¶ 42} In *Colon I* and *II*, for the first time, the court decided that a defective indictment could lead to structural error because it omitted the required mens rea for robbery charged under R.C. 2911.02(A)(2), even though the indictment tracked the statute under which Colon was charged. The majority in *Colon I* determined that the defendant had no notice that the state was required to prove that he had been reckless in inflicting, threatening to inflict, or attempting to inflict physical harm on another while committing or attempting to commit a

theft offense. *Colon I*, 118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, at ¶ 30. The *Colon I* majority further decided that the defendant was misled even though recklessness is the default standard listed in R.C. 2901.21(B), the criminal statute on culpability, and even though R.C. 2901.22(E) provides, "When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element."

**{¶ 43}** The majority opinion in this case states, "*Colon II* clarified that the omission of the mens rea element from an indictment does not require automatic reversal if the trial court properly instructs the jury." But in fact, *Colon II* has complicated criminal appeals even further. Although harsh, *Colon I* seemed to require reversal without exception when an indictment lacked a mens rea for an element of the crime; *Colon II* backed away from automatic reversal and requires an appellate court to look further at jury instructions in addition to making the determination of whether a "specific level of culpability" is required for an element of the crime.

### The Effect of a Missing Mens Rea

**{¶ 44}** Formerly, legislative silence as to mens rea in a statute defining an offense had been interpreted as an indication of the purpose to impose strict liability. See, e.g., *State v. Lisbon Sales Book Co.* (1964), 176 Ohio St. 482, 27 O.O.2d 443, 200 N.E.2d 590, paragraph two of the syllabus. However, the rule was modified in 1974, when the General Assembly repealed former R.C. 2901.21 and enacted a new statute expressing how mens rea, i.e., level of "guilt," is to be established. R.C. 2901.21 now provides:

**{¶ 45}** "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

**{¶ 46}** "(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;

**{¶ 47}** "(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.

**{¶ 48}** "(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

**{¶ 49}** Thus, when a particular culpability standard is not expressed for an element of an offense and the statute does not plainly indicate a purpose to impose strict liability, proof of recklessness is sufficient. *State v. Schlosser* (1997), 79 Ohio St.3d 329, 331, 681 N.E.2d 911. Recklessness was understood to be the default mens rea standard before the *Colon* cases. Now, the majority suggests that each time a statute fails to specify mens rea, there is an intention to impose strict criminal liability.

**{¶ 50}** But the majority's method of determining strict liability means we will not be taking the General Assembly at its own word, i.e., that recklessness is the default mens rea. This court should not be rewriting statutes. The legislature should determine what acts must be done with some degree of culpability and what acts require no guilty mind at all but are offenses for which a person is strictly liable.

### Plain Indication of Strict Liability

**{¶ 51}** The majority turns the R.C. 2901.21(B) analysis completely around by stating that the 1996 amendment to R.C. 2913.01 that added language prohibiting the brandishing or displaying of a deadly weapon to language prohibiting its possession and control does not establish "that the General Assembly *intended to require a specific mental intent.*" (Emphasis added.) R.C.

2901.21(B) clearly provides that when an expressed standard of culpability is missing, we are to discover whether the section under discussion "plainly *indicates a purpose to impose strict criminal liability*." In contravention of this statutory language, the majority changes the focus of the inquiry from whether there is a plain indication of a purpose to impose strict liability to whether there is an intention to require a specific mental intent.

{¶ 52} In its analysis, the majority relies upon *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. In *Wharf*, this court construed R.C. 2911.02(A)(1) and the robbery element that provides that no person attempting or committing a theft offense or fleeing immediately after the attempt or offense shall "have a deadly weapon on or about the offender's person or under the offender's control" as a strict liability element. Id. at 378, 715 N.E.2d 172. The court concluded that a mental state with regard to the weapon need not be proven: "Furthermore, one need not have the weapon in one's possession or under one's control while committing or attempting to commit a theft offense. A violation of R.C. 2911.02(A)(1) will also be found if the offender has a deadly weapon on or about his person, or under his control, while fleeing after such offense or attempt. *Thus, no use, display, or brandishing of a weapon, or intent to do any of the aforementioned acts, is necessary* according to the plain language of the statute. *Had the legislature so intended, it certainly could have required a level of conduct more severe* than it did in order to show a violation of the statute." (Emphasis added.) Id.

{¶ 53} The legislature seems to have done exactly that in R.C. 2911.01(A)(1) where, in addition to requiring that the offender have a deadly weapon on or about the offender's person or under the offender's control, the statute also requires that the person "either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1). The existence of this additional language, which the court in *Wharf* specifically noted

was lacking in R.C. 2911.02(A)(1), is an indication of "a level of conduct more severe" than merely possessing or having a weapon under one's control. The missing mens rea, therefore, expresses that the default mental state of recklessness is imposed in R.C. 2901.21(B).

{¶ 54} Before *Wharf,* this court was consistent in applying R.C. 2901.21(B). For example, we recognized a "plain indication" of a purpose to impose strict liability in R.C. 2915.02(A)(1), which prohibits bookmaking, and R.C. 2915.03(A)(1), which prohibits the use of a person's premises for gambling. See *State v. Wac* (1981), 68 Ohio St.2d 84, 86-87, 22 O.O.3d 299, 428 N.E.2d 428. The General Assembly had expressly differentiated degrees of culpability, specifying "knowingly" and "recklessly" in portions of the statute, but did not specify the degree of culpability in prohibiting bookmaking or the use of one's premises for gambling. The court concluded in *Wac*, "The General Assembly included the culpable mental state of 'knowingly' as an element of facilitating bookmaking. Nevertheless, there is no such requirement in the same subsection for bookmaking per se. This exclusion 'plainly indicates a purpose to impose strict criminal liability * * *.' R.C. 2901.21(B)." Id. at 86. And in addressing the gambling statute, we stated, "The General Assembly included recklessness as an element of permitting gambling on one's premises in subsection (2) [of R.C. 2915.03]. Subsection (1), however, does not contain a comparable standard. This exclusion 'plainly indicates a purpose to impose strict criminal liability * * *.' R.C. 2901.12(B)." Id. at 87.

{¶ 55} In other cases, it was also confirmed that the lack of any expressed mental state means that the standard applicable to the offense is recklessness. See *State v. Parrish* (1984), 12 Ohio St.3d 123, 124, 12 OBR 164, 465 N.E.2d 873 (because the statute does not expressly differentiate degrees of culpability, "the participants in the crime of prostitution addressed in R.C. 2907.25(A) must

possess some degree of criminal intent to be found guilty of either the principal offense or of complicity").

**{¶ 56}** In *State v. Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, the definition of the phrase "committed in the vicinity of a school" was compared to the phrase "committed in the vicinity of a juvenile" to determine whether "in the vicinity of a school" is a strict liability element in the offense of trafficking in LSD under R.C. 2925.03(C)(5)(b). A person trafficking in LSD in the "vicinity of a juvenile" is liable "whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense." R.C. 2925.01(BB). We stated that this language "makes it abundantly clear that the offender's mental state is irrelevant in determining whether the offender has committed an offense 'in the vicinity of a juvenile.' " *Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770, at ¶ 36. In contrast, "[a]n offense is 'committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P). Because the latter definition did not include the knowledge language included in R.C. 2925.01(BB), the General Assembly did not indicate a purpose to impose strict liability to trafficking in LSD in the vicinity of a school, and the default mental state of recklessness applied. Id. at ¶ 45.

**{¶ 57}** We have also properly applied R.C. 2901.21(B) in repeatedly holding that the "[e]xistence of the culpable mental state of recklessness is an essential element of the crime of endangering children." *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, paragraph one of the syllabus (holding that R.C. 2919.22(B)(2) neither specifies a mental state nor plainly indicates a purpose to impose strict liability); *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph one of the syllabus

(construing R.C. 2919.22(B)(3)); *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975 (construing R.C. 2919.22(A)). In these cases, this court noted that in each of the subsections of the statute, the General Assembly did not specify any degree of culpability or plainly indicate a purpose to impose strict liability.

{¶ 58} Because R.C. 2911.01(A) does not specify a degree of culpability and does not plainly indicate a purpose to impose strict liability, I would hold that recklessness is the degree of culpability for the element of brandishing, displaying, using, or indicating possession of a deadly weapon in the offense of aggravated robbery.

**Resolution**

{¶ 59} I would frankly call the *Colon* cases aberrant. *Colon I* and *II* render Crim.R. 7(D) and 12(C) and R.C. 2941.29 meaningless. Lester did not raise the issue of a defective indictment at any time during the pendency of the proceedings before the trial court. Had he raised the issue in the trial court, Crim.R. 7(D) would have allowed the state to seek the amendment of the indictment to include the mens rea and would have allowed Lester to move for a discharge of the jury had he been misled or prejudiced by the defect. *O'Brien*, 30 Ohio St.3d at 125-127, 508 N.E.2d 144. Under Crim.R. 12(C)(2), objections to defects in an indictment must be raised before trial, except for objections to the failure to show jurisdiction in the court or to charge an offense, which may be raised at any time during the pendency of the proceeding.

{¶ 60} In addition, R.C. 2941.29 provides, "No indictment or information shall be quashed, set aside, or dismissed, or motion to quash be sustained, or any motion for delay of sentence for the purpose of review be granted, nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment or information, unless the objection to such indictment or information, specifically stating the defect claimed, is made prior to the commencement of the trial, or at such time thereafter as the court permits."

**{¶ 61}** Reverting to pre-*Colon* precedent will reinstate the importance of the two criminal rules and the statute. Reviewing courts will not be faced with the issue of defective indictments for the first time on appellate review. They will not be tempted to save convictions by holding that an indictment missing a mens rea indicates a strict liability element rather than an element with the default culpability of recklessness.

**{¶ 62}** I would reinstate Lester's conviction because any error in the indictment was not called to the attention of the trial court at a time when the error could have been corrected by the trial court. Therefore, the objection to the defect was waived. I concur in judgment only.

_____

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Tanner B. McFall, Assistant Prosecuting Attorney, for appellant.

Christine Y. Jones, for appellee.

Timothy Young, State Public Defender, and Spencer Cahoon, Assistant State Public Defender, urging affirmance for amicus curiae, Ohio Public Defender.

_____