10-2828-cr
USA v. Echeverry

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2010

(Submitted: June 13, 2011    Decided: August 19, 2011)

Docket No. 10-2828-cr

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

CARLOS ECHEVERRY,

*Defendant-Appellant.*

———————————

Before:
       WINTER, PARKER, and CHIN, *Circuit Judges*.

———————————

Appeal from a July 6, 2010, judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) convicting defendant-appellant Carlos Echeverry of conspiracy to distribute narcotics and possession of a firearm during and in relation to a drug-trafficking crime.  The district court imposed a sentencing enhancement for the discharge of the weapon even though it was the intended victim and not the defendant who fired the gun.

AFFIRMED.

GEORGE ROBERT GOLTZER, Law Office of George
    Robert Goltzer, New York, New York,
    *for Defendant-Appellant*.

DANIEL L. STEIN, KATHERINE POLK FAILLA,
    Assistant United States Attorneys,
    *for* Preet Bharara, United States
    Attorney for the Southern District
    of New York, *for Appellee.*

PER CURIAM:

Defendant-appellant Carlos Echeverry appeals from a judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*) convicting him, pursuant to a guilty plea, of conspiracy to distribute narcotics, 21 U.S.C. § 846, and possession of a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A). The district court imposed a sentencing enhancement pursuant to § 924(c)(1)(A)(iii) for the discharge of the weapon, even though it was the intended victim -- and not Echeverry -- who fired the gun. Echeverry contends that because he did not possess the gun when it was discharged, the district court erred in applying the enhancement. We disagree, and affirm.

### BACKGROUND

From September 2001 through September 2004, Echeverry participated in a conspiracy to distribute and

-2-

possess with intent to distribute cocaine, heroin, and crack.

In September 2002, in furtherance of the conspiracy, Echeverry and a co-conspirator attempted to recover stolen narcotics from an individual. Echeverry and the co-conspirator possessed and brandished a firearm.[1] The intended victim, however, grabbed the gun and discharged it, wounding the accomplice.

On September 27, 2004, as part of the conspiracy, Echeverry delivered 315 grams of heroin to an undercover detective. He was arrested a few days later. On September 16, 2005, he waived indictment and pleaded guilty to one count of conspiracy to distribute narcotics and one count of possessing a firearm in relation to a drug-trafficking crime.

At sentencing on June 29, 2010, the parties disagreed whether Echeverry was subject to the sentencing enhancement under § 924(c)(1)(A)(iii) for the discharge of a weapon during the course of a drug-trafficking crime. Relying on the Supreme Court's decision in *Dean v. United States*, 129 S. Ct. 1849 (2009), the district court applied

---

[1] The record is unclear whether it was Echeverry or the co-conspirator who initially possessed the weapon, but Echeverry agrees that he is responsible for its possession and brandishment during a narcotics-trafficking offense.

the firearm-discharge enhancement. The district court held that if a defendant possesses a firearm in relation to a drug-trafficking offense, he is responsible for a subsequent discharge of that firearm, even if he does not have possession of the firearm when it is fired. The guidelines range was 288 to 330 months' imprisonment, but the district court imposed a below-guidelines sentence of the mandatory minimum of twenty years, consisting of ten years on the conspiracy count and, as required by § 924(c)(1)(A)(iii), an additional consecutive ten years on the gun count.

This appeal followed.

### *DISCUSSION*

The question before the Court is whether Echeverry was subject to the firearm-discharge enhancement set forth in 18 U.S.C. § 924(c)(1)(A)(iii), when he and an accomplice brandished a firearm during a drug-related attempted robbery and the intended victim managed to grab the gun and shoot the accomplice. As the district court's interpretation of § 924(c)(1)(A)(iii) presents a question of law, we review de novo. *See United States v. Thorn*, 446 F.3d 378, 388 (2d Cir. 2006).

We conclude that the district court correctly held that Echeverry was subject to the discharge enhancement.

-4-

First, the statutory language supports this conclusion. In pertinent part, § 924(c)(1)(A) provides as follows:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --
>
> (i) be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) *if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.*

18 U.S.C. § 924(c)(1)(A) (emphasis added). Hence, the statute provides that the ten-year mandatory minimum applies "if the firearm is discharged," and it does not require that the firearm be discharged by the defendant. Here, as Echeverry possessed a firearm in furtherance of a drug-related crime and the firearm was discharged during the course of that crime, by its plain terms the statute applies.

Second, the Supreme Court's decision in *Dean* controls. In *Dean*, the Supreme Court faced the question of

-5-

whether the discharge enhancement applied where the defendant's gun accidentally discharged while in his possession during a robbery. 129 S. Ct. at 1853. The Court concluded that "[t]he 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident." *Id.* at 1856.

In reaching its conclusion, the Court relied on the use of the passive voice in § 924(c)(1)(A)(iii). *See* 18 U.S.C. § 924(c)(1)(A)(iii) (imposing ten years' imprisonment "if the firearm is discharged"). The Court reasoned: "Congress's use of the passive voice . . . indicates that subsection (iii) does not require proof of intent. The passive voice focuses on an event that occurs *without respect to a specific actor*, and therefore without respect to any actor's intent or culpability." *Dean*, 129 S. Ct. at 1853 (emphasis added); *see also id.* at 1854 (holding that whether a subsection (iii) enhancement applies turns on "whether something happened -- not how or why it happened").

The clear import of the Supreme Court's decision is that a defendant need not directly cause a discharge to be subject to the firearm-discharge enhancement. Subsection (iii) enhances a defendant's sentence based on "event[s] that occur[] without respect to a specific actor." *Id.*

Thus, that neither Echeverry nor his accomplice pulled the trigger -- intentionally or accidentally -- does not isolate Echeverry from the subsection (iii) enhancement.  In essence, by possessing the gun in furtherance of a narcotics transaction, Echeverry and his accomplice assumed the risk that a discharge would occur during the transaction -- even if unintentional, as in <u>Dean</u>, or directly caused by a third party, as here.  Echeverry and his accomplice certainly should have foreseen, for example, that the intended victim might try to take the gun away from them during the attempted robbery.  In short, <u>Dean</u> forecloses Echeverry's proposed interpretation of subsection (iii).

Echeverry attempts to distinguish *Dean* by arguing that the discharge there was accidental while the discharge here was intentional.  The effort fails.  For these purposes, there is no meaningful distinction between an accidental discharge and an intentional discharge by a third party.  The key, again, is "whether something happened -- not how or why it happened."  129 S. Ct. at 1853.  When a defendant possesses a firearm during a drug-trafficking offense, the risk of an intended victim trying to seize the gun is just as real as an accidental discharge.

Third, Echeverry's reliance on *United States v. Daija*, 529 F. Supp. 2d 465 (S.D.N.Y. 2008), is unavailing.

In *Daija* the district court held that subsection (iii) did not apply unless the discharge was contemporaneous with the defendant's possession of the weapon. *See Daija*, 529 F. Supp. 2d at 469 (requiring that "defendant continued to possess [the firearm] in furtherance of the crime when it was discharged" for subsection (iii) to apply). *Daija*, however, was decided *before* the Supreme Court issued *Dean*, and in *Dean* the Supreme Court expressly noted that "[t]he discharge provision on its face contains no temporal or causal limitations." 129 S. Ct. at 1854. Moreover, the district court in *Daija* relied on reasoning -- "the defendant discharged the firearm intentionally, that is, not accidentally," 529 F. Supp. 2d at 469 & n.1 -- that the Supreme Court squarely rejected in *Dean*. 129 S. Ct. at 1853.

Accordingly, we hold that the district court correctly held that the firearm discharge enhancement applied in the circumstances of this case.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

-8-