[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14932
_____

D. C. Docket No. 0:08-cv-62075-JAL

MARLBOROUGH HOLDINGS GROUP, LTD.,

Plaintiff-Appellant,

versus

AZIMUT-BENETTI, SPA,
PLATINUM YACHT COLLECTION NO. TWO, INC. f/k/a Richard
Bertram Yachts, Inc. f/k/a Richard Bertram, Inc.,
GEORGE JOUSMA,
MICHAEL BUSACCA,
SCOTT WARD,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 31, 2013)

Before CARNES and BLACK, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

_____
[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

Appellant Marlborough Holdings Group, Ltd. (Marlborough) appeals the district court's grants of summary judgment to Appellees Azimut-Benetti, SpA (Benetti); Platinum Yacht Collection No. Two, Inc., f/k/a Richard Bertram Yachts, Inc., f/k/a Richard Bertram, Inc. (Bertram); and George Jousma, Michael Busacca, and Scott Ward, (collectively with Bertram, the Bertram defendants).[1]

Marlborough argues the district court erred by (1) granting summary judgment to Benetti on its Magnuson-Moss Warranty Act (MMWA) and breach of express warranty claims because Marlborough was covered by a ten-year warranty in a contract between Bertram and Benetti; (2) granting summary judgment to Benetti and the Bertram defendants on its Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claims because those claims were not time-barred; and (3) finding Marlborough did not plead a claim for civil conspiracy and consequently ignoring the implications of its conspiracy allegations.[2]  After careful review, we affirm.

---

[1] Marlborough also sued Pliske Marine Inc. d/b/a World Yacht Survey; Henry M. Pliske; CMP Marine, Inc.; Christopher Pliske (collectively Pliske); and American Bureau of Shipping (ABS).  Marlborough voluntarily dismissed its claims against Pliske and ABS with prejudice, and those claims are not before us on appeal.

[2] Marlborough does not raise any argument in its initial brief about the district court's resolution of Count X, which alleged state law claims for fraudulent concealment and misrepresentation.  As such, any argument regarding Count X has been abandoned.  *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) ("[I]ssues not raised on appeal are abandoned.").  Marlborough also waived its argument that the district court should not have dismissed Count X on a motion for summary judgment for being improperly pled because that argument was presented for the first time in Marlborough's reply brief.  *See*

## I. BACKGROUND

In 1999 Benetti, an Italian yacht manufacturer, began building a 115' luxury yacht that came to be called the *M/Y Symphony* (the yacht). Benetti towed the yacht's hull from one side of Italy to the other while the yacht was under construction. During the move, the yacht's hull came into contact with the ocean floor and sustained damages necessitating extensive repairs.[3] Benetti had ABS, a classification society, survey the damage and approve the repairs.

In July 2000, Benetti's CEO negotiated the sale of the yacht with the president of Bertram, its exclusive dealer of yachts in the United States. Benetti disclosed the damage and repairs to the yacht, and agreed to provide a ten-year warranty for the yacht's hull. The ten-year warranty was contained in section 7.2.3 of the final "Agreement for Purchase of a Motor Yacht" (the Agreement), which Bertram and Benetti executed on August 2, 2000. The warranty obligated Benetti to repair or replace "all defects in the hull structure, where such defects become apparent within ten (10) years from protocol signed ex-factory acceptance." The Agreement also contained an anti-assignment provision requiring each party to

*Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1310 n.17 (11th Cir. 2012) ("Because [the plaintiff] raised this argument for the first time in its reply brief, we treat the argument as waived.").

[3] The parties dispute the nature and extent of the damages to the hull. Because this case comes to us on summary judgment, we must view the facts in the light most favorable to Marlborough. Regardless, the precise nature and extent of the damages is irrelevant to our disposition of the issues on appeal.

3

obtain the other's written consent before assigning any of its rights under the contract.

Before accepting the yacht, Bertram had independent marine surveyors, Pliske, inspect the yacht and observe its performance during two sea trials. In a report dated September 7, 2000, Pliske noted it had been informed that the yacht was "slightly damaged in transit while being towed." Pliske nevertheless opined that the repair was "well done to the original quality of construction," and the yacht had no visible sign of repairs. Bertram accepted the yacht on or about September 25, 2000.

On January 22, 2001, Benetti sent Bertram a copy of section 7.2.3 of the Agreement as well as the engine manufacturer's warranty. In May 2001, Bertram sold the yacht to Atlantic Coast Yacht Charters, LLC, and its sole member, George Hall. Although Bertram initially offered Hall a twelve-month warranty on the yacht, Hall received a five-year warranty after negotiations. No one at Bertram ever suggested to Hall that a ten-year warranty was available for the yacht, or that the yacht had suffered damage and been repaired during construction. After being retained to conduct a pre-acceptance survey and sea trial, Pliske gave Hall a survey report stating the yacht was "a brand new vessel under warranty," and omitting information about the towing incident and damages to the hull. Hall was not told Pliske had previously surveyed the yacht for Bertram.

4

Hall owned the yacht for approximately seven years before Marlborough purchased it from him in March 2008. As part of the transaction, Marlborough retained Pliske to conduct a pre-acceptance survey. Pliske's report informed Marlborough it had previously inspected the yacht as a brand new vessel in 2001, and that the current market value of the yacht was $9,200,000. The report omitted any reference to the towing incident and damage the yacht sustained during construction.

In April or May 2008, a crack was discovered in the yacht's bow, prompting Marlborough's counsel to send Benetti's local representative in the United States a letter complaining of "previously undisclosed voids in the bow" and other problems. The letter also alerted Benetti to possible legal action for manufacturing defects reasonably believed to have caused the crack and to have been disguised or hidden.[4] Benetti, in turn, sent Marlborough a letter denying there were any possible claims against it.

In June 2008, Marlborough arranged to ship the yacht from Florida to Russia. The next month, the yacht was improperly lifted onto a transport ship, and sustained extensive damage. Subsequent inspection revealed the 1999 repairs, as well as the fact that many of the patches were failing. Marlborough contacted

---

[4] The May 14, 2008, letter stated that Marlborough thought there were manufacturing defects that had been hidden. The letter did not make any specific reference to the 1999 damage and repairs.

Benetti about the 1999 repairs, and, following an inspection of the yacht, Benetti refused to pay to fix the patches. Marlborough then filed the instant lawsuit.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, viewing the evidence and drawing all reasonable inference in the light most favorable to the non-moving party. *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005). We also review de novo the question of whether a written contract is ambiguous, as well as the district court's conclusions of law and its application of law to the facts. *Merril Stevens Dry Dock Co. v. M/V Yeocomico II*, 329 F.3d 809, 813 (11th Cir. 2003). We may affirm the district court's decision on any ground supported by the record. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

## III. DISCUSSION

*A. Magnuson-Moss Warranty Act and Breach of Express Warranty Claims*

Marlborough argues it was entitled to enforce the ten-year warranty in the Agreement under the MMWA and Florida law because: (1) the language of the ten-year warranty itself does not limit its application to Bertram or otherwise limit its transferability; (2) the evidence established the ten-year warranty was transferable, or, alternatively, an issue of material fact existed regarding the parties' intent concerning its transferability; and (3) Benetti treated the warranty as

6

a separate and divisible contract by sending only section 7 of the Agreement to Bertram on January 22, 2001.

1. The Magnuson-Moss Warranty Act

The MMWA requires that "any warrantor warranting a consumer product to a consumer by means of a written warranty shall . . . fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty."  15 U.S.C. § 2302(a).[5]  The relevant provisions of the MMWA, by their terms, apply only to written warranties.  *See id.*; 16 C.F.R. § 700.3(c) ("The Magnuson-Moss Warranty Act generally applies to written warranties covering consumer products.  Many consumer products are covered by warranties which are neither intended for, nor enforceable by, consumers.").  Pertinent to this appeal, the MMWA defines a written warranty as:

> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,
>
> which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer *for purposes other than resale of such product*.

---

[5] The MMWA defines three categories of consumers:  (1) "a buyer (other than for purposes of resale) of any consumer product"; (2) "any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product"; and (3) "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)."  15 U.S.C. § 2301(3). Marlborough is a consumer under the first definition.

15 U.S.C. § 2301(6)(B) (emphasis added).

The record evidence as well as the express language of the Agreement reveal that the Agreement was entered into for purposes of resale. For example, the Agreement specifically provides that Bertram would allow the yacht to be advertised via the publication of pictures and a brochure. Such a provision makes sense only if the parties intended to attract purchasers so the yacht could be resold. Therefore, because the ten-year warranty was part of the basis of a bargain entered into between a supplier and buyer for purposes of resale, it was not a "written warranty" within the meaning of the MMWA, and Marlborough is not entitled to enforce it under that statute.

2. Express Warranty

Marlborough also could not enforce the warranty under state law. Under Florida law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313(1)(a). Florida contract law recognizes that "a third party may enforce an agreement between others only if it is an intended beneficiary, not an incidental beneficiary, of that agreement." *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1441 (11th Cir. 1996) (citing *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985)). Accordingly, a consumer in Florida

8

may enforce a manufacturer's express warranty on a vehicle when "the clear terms of the warranty extend[] coverage to the first retail purchaser, and each subsequent purchaser," and when the consumer is assigned the rights to the manufacturer's warranty. *See Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 457 (Fla. 3d DCA 2005) (internal quotation marks omitted).

The clear terms of section 7.2.3 of the Agreement did not extend coverage to the first retail purchaser and each subsequent purchaser. Additionally, Bertram never assigned its rights to the ten-year warranty under the Agreement. Marlborough, moreover, may not enforce the Agreement as a third party because it was, at most, an incidental beneficiary of the agreement, rather than an intended beneficiary. *See Maccaferri Gabions, Inc.*, 91 F.3d at 1441.

Marlborough contends a dispute of material fact exists because the Agreement was ambiguous as to the parties' intent regarding the transferability of the warranty. Whether a contract is ambiguous, however, is a question of law, *Merril Stevens Dry Dock Co.*, 329 F.3d at 814, and no ambiguity appears from the language of the Agreement itself. Reading the contract as a whole, *see Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011), the anti-assignment clause applied to the ten-year warranty and limited its transferability.

Marlborough cannot avoid the anti-assignment provision by arguing that Benetti's January 22, 2001, letter to Bertram constituted a separate and divisible

9

contract.  The letter stated "[p]lease find herein enclosed the warranty clause of the selling contract" for the yacht, demonstrating that Benetti was simply providing one clause of a pre-existing contract, not creating a distinct contract.  *Cf. W. Constr., Inc. v. Fla. Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012) ("For there to be an enforceable contract, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." (quotation omitted)).

## B. Florida Deceptive and Unfair Trade Practices Act Claims

Marlborough argues the district court erred in concluding its FDUTPA claims were time-barred.  According to Marlborough, the defendants' own behavior resulted in the delayed discovery of their deceptive and unfair actions, and the delayed discovery rule rendered its claims timely.  Marlborough also asserts its conspiracy claims were not time-barred and it alleged ongoing tortious activity extending into the year 2008.

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  Florida law provides a four-year statute of limitations for "[a]n action founded on a statutory liability," *id.* § 95.11(3)(f), as well as for "[a] legal or equitable action founded on fraud," *id.* § 95.11(3)(j).

10

Section 95.031(2)(a) of the Florida Statutes establishes a delayed discovery rule for actions founded upon fraud or constructive fraud, providing:

> An action founded upon fraud under s. 95.11(3), including constructive fraud, must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3) . . . .

Fla. Stat. § 95.031(2)(a).[6]  Thus, a plaintiff must initiate an action "founded upon fraud" or constructive fraud within four years of discovering the facts underlying the action, or within four years of when those facts should have been discovered with diligence.  *See id.*

The four-year statute of limitations for an action founded upon a statutory liability applied to Marlborough's FDUTPA claims.  *See Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.1 (Fla. 1st DCA 2010) ("The statute of limitations for a FDUTPA claim is four years pursuant to section 95.11(3)(f), Florida Statutes, as it is based on a statutory liability."); *S. Motor Co. of Dade Cnty. v. Doktorczyk*, 957 So. 2d 1215, 1216-17 (Fla. 3d DCA 2007) ("Section 95.11(3)(f), Florida Statutes (1996), covers an action founded on a statutory liability, which would apply to Doktorczyk's FDUTPA claim." (quotation and brackets omitted)).  Hall purchased the yacht (and received the five-year warranty)

---

[6] Prior to 2003, the statute provided a delayed discovery rule for an action "for" fraud, and did not reference constructive fraud.  Fla. Stat. § 95.031(2)(a) (2003 amendments).

in May 2001.  Marlborough's causes of action stemming from those events thus expired in 2005.[7]  Because Marlborough did not file its initial complaint until December 28, 2008, its FDUTPA claims were time-barred absent application of the delayed discovery rule.  *See Yusuf Mohamad Excavation v. Ringhaver Equip. Co.*, 793 So. 2d 1127, 1127-28 (Fla. 5th DCA 2001) (explaining that a plaintiff's cause of action under the FDUTPA expired in 1994 because it was based on conduct that occurred in 1990).

The delayed discovery rule, however, was inapplicable to Marlborough's FDUTPA claims, as the FDUTPA is a statute and actions under it are "founded on a statutory liability."  *See Brown*, 32 So. 3d at 662 n.1.  Although the Florida legislature amended § 95.031(2)(a) in 2003 to replace the phrase "[a]n action for fraud" with the phrase "[a]n action founded upon fraud," Marlborough's argument that the amendment expanded the delayed discovery rule to FDUTPA claims premised on fraud finds no support in the plain language of the statute.  Section 95.031(2)(a) uses the phrase "founded upon fraud," which parallels the language of § 95.11(3)(j), the limitations provision for fraud claims.  Notably, § 95.031(2)(a) does not contain any language paralleling or referencing the language of § 95.11(3)(f), the limitations period for statutory claims.  Marlborough's reading

---

[7] Marlborough has abandoned any arguments regarding the district court's finding that Benetti's alleged actions in 2008 and after did not violate the FDUTPA because it did not raise them on appeal.  *See N. Am. Med. Corp.*, 522 F.3d at 1217 n.4.  Similarly, Marlborough waived its argument that its FDUTPA claims did not accrue until it purchased the yacht in 2008 by raising the argument for the first time in its reply brief.  *See Mosley*, 694 F.3d at 1310 n.17.

12

would nullify the statutory distinction between actions founded on a statutory liability and legal or equitable actions founded on fraud.  We presume that, where the legislature included language in one section of a statute, but omitted it from another section, the legislature did so intentionally, *see Dean v. United States*, 556 U.S. 568, 573 (2009), and we decline to "cut and paste language from one part of [a statute] into another part," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 763 (11th Cir. 2010).

Marlborough cannot avoid the running of the limitations period by relying on its allegations that the Appellees conspired to conceal the yacht's grounding, repairs, and ten-year warranty.  Marlborough's contentions that a conspiracy existed between the Appellees and Pliske amounted only to unsupported factual allegations or pure speculation.  *See Ellis*, 432 F.3d at 1326 ("[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quotation marks and emphasis omitted)).  Because the limitations period expired long before Marlborough filed its FDUTPA claims, the district court did not err by granting summary judgment to Bertram and Benetti.

*C. Civil Conspiracy Allegations*

13

Marlborough asserts the district court erred in concluding it failed to plead a separate claim for civil conspiracy and by consequently ignoring its allegations of a conspiracy. Marlborough contends it properly pled its conspiracy claims within its FDUTPA and fraud counts in the second amended complaint under Fed. R. Civ. P. 8(d)(2) and because civil conspiracy must be pled as part of an underlying substantive claim.

Under the Federal Rules of Civil Procedure, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Nevertheless, where a plaintiff asserts multiple claims for relief, a properly drafted pleading "will present each claim for relief in a separate count." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *see also* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count.").

Marlborough's reading of Rule 8 conflates alternative *statements* of a single claim with the claim itself. Although Rule 8 allows a single claim to be stated in the alternative, it does not allow multiple distinct claims to be amassed into a single undifferentiated count. In fact, we have resoundingly denounced such pleadings. *See, e.g.*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 (11th Cir. 2008). Thus, even if the district court declined to consider

14

Marlborough's civil conspiracy claim (and we are not convinced that it did), the court did not err by doing so because Marlborough should have presented the claim in a separate count. *See id.* at 980 n.57.

Marlborough's contention that civil conspiracy cannot be pled as a separate cause of action is unavailing. "Under Florida law, the gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (quotation omitted). Thus, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Id.*; *see also Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc.*, 13 So. 3d 1090, 1096 (Fla. 4th DCA 2009). However, the fact that a conspiracy claim is dependent on the merits of an underlying, predicate claim does not mean that the two claims must be pled together within a single count, in violation of the federal pleading standards. *See Anderson*, 77 F.3d at 366; *cf. Martinez*, 480 F.3d at 1067-68 (holding that an insurer's civil conspiracy claim under Florida law failed to comply with Fed. R. Civ. P. 9(b), which requires that a claim alleging a conspiracy to commit fraud be pled with specificity).

## IV. CONCLUSION

For the foregoing reasons we AFFIRM the district court's grants of summary judgment.

15