ROY B. DALTON JR., United States District Judge *1260 Amid an unprecedented financial crisis, the federal government injected billions of dollars into the country's largest financial institutions to tourniquet the hemorrhaging national economy. A key feature of this bank bailout was the Home Affordable Modification Program ("HAMP "), under which banks, including Defendant Bank of America, N.A. ("BOA "), received payments from the government to provide mortgage loan modifications to homeowners, including Plaintiff Carmen Brexendorf ("Brexendorf "). (See Doc. 41.) As a purported victim of BOA's scheme to cash in on the broken American dream of home ownership, Brexendorf filed this fraud action.
Now before the Court is BOA's Motion to Dismiss the Second Amended Complaint (Doc. 43 ("Motion ") ), to which Brexendorf responded (Doc. 45). On review, the Motion is due to be granted in part and denied in part.
I. BACKGROUND [1]
In 2006, Brexendorf purchased a home in Kissimmee, Florida for $260,000 with a mortgage serviced by BOA. (Doc. 41, ¶ 37.) Falling on hard times in 2009, and with default imminent, Brexendorf contacted BOA and requested a loan modification under HAMP. (Id. ¶ 39.) Implemented in March 2009, the HAMP program was intended to break the tidal wave of foreclosures facing many American homeowners by restructuring mortgage loans already in default, or those in imminent risk of default, by reducing monthly payments to a manageable level. (See id. ¶ 11.)
BOA's participation in the HAMP program was governed by its Servicer Participation Agreement ("Agreement ") entered into with the United States' financial agent, Federal National Mortgage Association. (See id. ¶ 12; Doc. 41-1, p. 3.) The Agreement required BOA to "to use 'reasonable efforts' to effectuate any modification of a mortgage loan under the [p]rogram." (Doc. 41, ¶¶ 12-13, 16.) A HAMP modification proceeds in two stages. First, an eligible borrower applies for a temporary loan modification and receives a Trial Payment Period ("Trial Period ") during which mortgage payments are made under the terms of the modification. (Id. ¶¶ 13-14.) If a borrower complies with the Trial Period terms, the second stage consists of the borrower and servicer entering into a Modification Agreement, wherein the terms of the original mortgage loan are modified for five years. (See id. ¶¶ 14-15.)
Brexendorf followed this first step and received written confirmation of her modification approval. But despite her having made several Trial Period payments, BOA foreclosed on her home on May 12, 2014. (Id. ¶ 56.) Now, Brexendorf claims that BOA perpetuated a scheme to feign compliance with the Agreement and avoid approving her HAMP application. (See id. ¶¶ 18, 31.) She asserts a common law fraud *1261 claim ("Fraud Claim ") and a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA Claim ") against BOA for this alleged fraudulent conduct. (Doc. 41, ¶¶ 80-108).
In her Fraud Claim, Brexendorf alleges BOA committed five fraudulent acts: (1) telling her that "being 'past due and in default' on her mortgage was a prerequisite for a HAMP modification" and failing to tell her that she could qualify for HAMP if default was imminent ("HAMP Eligibility Misrepresentation "); (2) telling her the requested supporting financial documents Brexendorf submitted to BOA were "not received," "incomplete," or "not current" ("Supporting Documents Misrepresentation "); (3) telling her that she was approved for a HAMP modification and needed to start making trial payments ("HAMP Approval Misrepresentation "); (4) omitting its practice of placing Trial Period payments into "unapplied accounts" ("Trial Payments Omission "); and (5) omitting how inspection fees charged to Brexendorf's account would be applied ("Inspection Fee Omissions ") (Id. ¶¶ 41-43, 47, 53-54, 62). Such conduct, according to Brexendorf, also violates FDUTPA. (Id. ¶ 98.)
Biting back, BOA seeks dismissal of the Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 43 ("Motion ").) Briefing complete (Doc. 45), the matter is now ripe.
II. LEGAL STANDARD
Rules 8 and 10 set forth minimum requirements for complaints filed in this Court. At a minimum, such filings must: (1) include "short and plain" statements of the pleader's claims set forth in "numbered paragraphs each limited as far as practicable to a single set of circumstances;" and (2) provide more than mere labels, legal conclusions, or formulaic recitation of the elements of a claim. See Fed. R. Civ. P. 8(a), 8(d), 10(b) ; see also Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Local Rules 1.05, 1.06.
Where a complaint contains claims of fraud or mistake, however, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity. See Brooks v. Blue Cross & Blue Shield of Fla. , 116 F.3d 1364, 1381 (11th Cir. 1997). This particularity requirement is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." U.S. ex rel. Matheny v. Medco Health Sols., Inc. , 671 F.3d 1217, 1223 (11th Cir. 2012) (quoting Hopper v. Solvay Pharm., Inc. , 588 F.3d 1318, 1324 (11th Cir. 2009) ).
If a complaint does not comport with the pleading requirements, it is plainly barred; or, if it otherwise fails to set forth a plausible claim, then it may be dismissed under Rule 12(b)(6). See Ashcroft v. Iqbal , 556 U.S. 662, 672, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."See id. at 679, 129 S.Ct. 1937. In assessing the sufficiency of factual content and the plausibility of a claim, courts may consider only: (1) the allegations of the complaint; (2) the exhibits attached to the complaint; (3) documents that are undisputed and central to plaintiffs' claim; and (4) matters subject to judicial notice. See Reese v. Ellis, Painter, Ratterree & Adams, LLP , 678 F.3d 1211, 1215-16 (11th Cir. 2012). Courts must: (1)
*1262 disregard conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiffs. See Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. ANALYSIS
In its Motion, BOA argues that Brexendorf's Fraud and FDUTPA Claims, regardless of the misrepresentation or omission, are barred by the statute of limitations, Florida's Banking Statute of Frauds, and the failure to satisfy an express condition precedent. (See Doc. 43, pp. 6-12.) BOA also contends that the Fraud Claim violates Rule 9(b) by failing to allege circumstances constituting fraud with sufficient particularity. (Id. at 13-21.) Finally, BOA posits that Brexendorf has failed to state a FDUTPA claim. (Id. at 21-23.) These arguments are addressed in turn.
A. Statute of Limitations
BOA first argues that both of Brexendorf's claims are time-barred under the applicable statute of limitations. (Doc. 43, pp. 1, 6-8.) A statute of limitations defense is an affirmative defense and BOA bears the burden of proof. La Grasta v. First Union Secs., Inc. , 358 F.3d 840, 845 (11th Cir. 2004). Dismissal on this ground is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. Id.
1. Fraud Claim
Under Florida law, a fraud claim must be commenced within four years from when the cause of action accrued. Fla. Stat. § 95.11(3)(j). Fraud actions accrue when the plaintiff discovers, or should have discovered with due diligence, the facts giving rise to the fraud ("Delayed Discovery Doctrine "). Id. § 95.031(2)(a); see also Davis v. Monahan , 832 So.2d 708, 709 (Fla. 2002).
Brexendorf alleges that in November 2009: (1) a BOA representative advised her to stop making regular mortgage payment because past due or default status was a prerequisite to obtain a HAMP modification (id. ¶ 41); and (2) she received a letter approving her application, instructing her to make Trial Period payments (id. ¶¶ 46, 53). Throughout 2009 and 2010, Brexendorf dutifully complied with BOA's advice and payment plan-falling into default on her mortgage and making nine Trial Period payments. (Id. ¶ 43, 56.) When BOA informed Brexendorf that her supporting documents were either not current, incomplete, or not received, she resubmitted them. (Id. ¶ 50.) Using her default status against her, BOA did not apply her Trial Period payments to her outstanding mortgage balance. (Id. ¶¶ 45, 56.) As a result, BOA foreclosed on her home on May 12, 2014. (Id. ¶¶ 41, 56.) On November 20, 2014-five years after beginning the HAMP process-BOA informed Brexendorf that it denied her HAMP application. (Id. ¶ 57.)
Seizing on the allegations that the alleged misrepresentations and omissions were made in 2009 and 2010, BOA submits that the Fraud Claim is time-barred because its conduct occurred seven years before Brexendorf initiated suit on December 1, 2017. (Doc. 43, pp. 6-7.) But Brexendorf alleges that she could not have discovered the facts giving rise to BOA's fraud in 2009 and 2010 given BOA's efforts to conceal the circumstances of her HAMP eligibility, processing, and approval. (See Doc. 41, ¶¶ 70, 72.) Relying on the Delayed Discovery Doctrine, Brexendorf argues that her Fraud Claim is timely. (See Doc. 45, pp. 4-5.) Accepting her allegations as true, it is not apparent from the face of the *1263 Second Amended Complaint that Brexendorf should have discovered the facts giving rise to the Fraud Claim in 2009 and 2010, at least to the extent it rests on the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, HAMP Approval Misrepresentation, and Trial Payments Omissions. See La Grasta , 358 F.3d at 845. Rather, viewing the facts in the light most favorable to Brexendorf, the Fraud Claim based on these four fraudulent acts may have accrued when BOA foreclosed on Brexendorf's home on May 12, 2014. Discovery may cast such facts in a more ominous light; however, at the pleading stage, the Court declines to dismiss the Fraud Claim as time-barred, at least to the extent it rests on the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, HAMP Approval Misrepresentation, and Trial Payments Omission.
Not so for the Inspection Fee Omissions. Brexendorf alleges that BOA charged her account for a property inspection on sixty-one occasions between 2008 and 2014, including December 10, 2009; January 15, 2010; March 19, 2010; June 24, 2010; and July 20, 2010. (Doc. 41, ¶ 61.) But this statute of limitations on the Inspection Fee Omissions began to run on the date BOA charged Brexendorf's account. See, e.g. , Alonso v. Bank of Am., N.A. , No. 8:17-cv-2547-T-33MAP, 2018 WL 2215052, at *3 (M.D. Fla. May 15, 2018) (concluding that the plaintiff's fraud claim based on inspection fee omissions accrued when those fees were charged). A diligent mortgagor would and could have checked her bank account and noticed these fees. Thus, the specific charges Brexendorf alleges occurred in 2009 and 2010 are barred by the statute of limitations.
As to Brexendorf's allusions of similar fraudulent conduct extending into 2014, she offers no specific dates. (See Doc. 41, ¶ 61.) This renders it impossible for the Court to determine whether such conduct is time-barred. Given that Brexendorf initiated this suit on December 1, 2017, the only alleged inspection fees that could give rise to her Fraud Claim must have occurred on or after December 1, 2013. Nevertheless, absent contrary factual allegations, the Inspection Fee Omissions are not subject to dismissal on statute of limitations grounds. See La Grasta , 358 F.3d at 845.
2. FDUTPA Claim
BOA also contends that the FDUTPA Claim, which arises from the same alleged misrepresentations and omissions, is time-barred. (See Doc. 43, pp. 1, 6.) FDUTPA claims are subject to a four-year statute of limitations applicable to lawsuits based on statutory liability. Fla. Stat. § 95.11(3)(f). Unlike fraud actions, the Delayed Discovery Doctrine does not apply to FDUTPA claims, even those founded on fraud. See Marlborough Holdings Grp. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc. , 505 F. App'x 899, 906 (11th Cir. 2013).[2] Rather, the limitations period begins to run when the last element of the claim occurred. Fla. Stat. § 95.031(1). The last element of the FDUTPA Claim is actual damages. See Dolphin LLC v. WCI Cmties., Inc. , 715 F.3d 1243, 1250 (11th Cir. 2013) (identifying the elements of a FDUTPA claim).
Brexendorf alleges that because of BOA's misrepresentations and omissions, she suffered: (1) "loss of funds paid to BOA"-that is, her Trial Payments that *1264 were not applied to her mortgage; (2) "fraudulent inspection fees"; (3) "costs incurred for needlessly sending in the HAMP application on numerous occasions"; and (4) "loss of equity and future equity in the home." (Doc. 41, ¶ 107.) Apart from the inspections fees that BOA purportedly charged in 2013 and 2014, Brexendorf suffered these damages in 2009 and 2010, regardless of whether she had discovered that she suffered them when they occurred. See Marlborough , 505 F. App'x at 906 (holding that the delayed discovery doctrine does not apply to FDUTPA claims). At the latest then her FDUTPA Claim expired in 2014 and it is time-barred to the extent it is based on the HAMP Eligibility Misrepresentation, HAMP Approval Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions before December 1, 2013.
As a last-ditch effort, Brexendorf contends that the statutes of limitations were tolled during the pendency of an unrelated putative class action of which she is a proposed class member- George v. Urban Settlement Services , No. 13-cv-01819-PAB-KLM, 2013 WL 3470827 (D. Colo. Jul. 10, 2013) (" George Action "). (Doc. 41, ¶¶ 78-79; Doc. 45, p. 6.) The grist for this position is American Pipe & Construction Company v. Utah , 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). (Doc. 45, p. 6.) But Brexendorf misreads American Pipe .
Tolling is appropriate where the separate suit filed by an individual plaintiff asserts the particular claims raised in the original putative class action; however, suspension of a statute of limitations is inappropriate where, as here, the individual claims are different from those pled in the class action. See, e.g. , Natan v. Citimortgage, Inc. , CV 14-5779 DSF (PLAx), 2016 WL 10837861, at *1 (C.D. Cal. Sept. 21, 2016) (rejecting application of American Pipe because putative multidistrict litigation did not include HAMP fraud or misrepresentation claims); see also Crown, Cork & Seal Co., Inc. v. Parker , 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (Powell, J. concurring) (noting that American Pipe's tolling rule "should not be read ... as leaving a plaintiff free to raise different or peripheral claims"). As the George Action's operative pleading asserted a federal RICO and promissory estoppel claims, not a fraud and FDUTPA claim, see George Action, Doc. 12, Brexendorf's tolling argument fails.
B. Banking Statute of Frauds
BOA also argues that the Fraud Claim is barred by Florida's Banking Statute of Frauds. (Doc. 43, p. 11.) The Banking Statute of Frauds provides that a debtor may not sue a creditor over a credited agreement absent a signed, written document. Fla. Stat. § 687.0304(2). A credit agreement is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Id. § 687.0304(1)(a). To the extent verbal conversations add "to the purported 'promise,' such addition is barred by ... 'Florida's Banking Statute of Frauds.' " Bloch v. Wells Fargo Home Mortg. , 755 F.3d 886, 889 (11th Cir. 2014). Additionally, Florida's Banking Statute of Frauds precludes fraud claims where a borrower has alleged that the lender orally agreed to make financial accommodations to the borrower. See, e.g. , Coral Reef Drive Land Dev., LLC v. Duke Realty Ltd. P'ship , 45 So.3d 897, 903 (Fla. 3d DCA 2010).
Here, Brexendorf's HAMP Approval Misrepresentation involves an oral statement regarding a credit agreement under the Banking Statute of Frauds. (See Doc. 41, ¶ 53.) Indeed, Brexendorf alleges that *1265 BOA agreed to and did make a financial accommodation in the form of reduced Trial Period payments. (Id. ) Therefore, to the extent the Fraud Claim is based on the HAMP Approval Misrepresentation it is due to be dismissed with prejudice. See, e.g. , Alonso , 2018 WL 2215052, at *3. Because none of the other misrepresentations and omissions underpinning the Fraud Claim involve a credit agreement for purposes of the Banking Statute of Frauds, they are not barred.[3]
C. Rule 9(b)
Next, BOA seeks dismissal of the Fraud Claim because Brexendorf has not satisfied the heightened pleading standard required by Rule 9(b). (Doc. 43, pp. 13-21.) Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud or mistake." To state a claim for common law fraud, a plaintiff must allege that: (1) the defendant made a false representation of material fact; (2) the defendant knew that the representation was false; (3) the defendant made the representation to induce the plaintiff to act in reliance on it; (4) detrimental reliance, and (5) injury. Berkery v. Pratt , 390 F. App'x 904, 909 (11th Cir. 2010).
Rule 9(b) also requires identifying: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of, and persons responsible for, the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the defendant gained by the alleged fraud. See Ambrosia Coal & Const. co. v. Pages Morales , 482 F.3d 1309, 1316-17 (11th Cir. 2007). Although BOA attacks each of the five alleged misrepresentations and omissions, because the HAMP Approval Misrepresentation and portions of the Inspection Fee Omissions are time-barred, the Court addresses only the remaining misrepresentations and omissions.
1. HAMP Eligibility Misrepresentation
In her attempt to obtain a HAMP modification, Brexendorf alleges that on November 25, 2009, BOA's loan representative, Ken, advised her "to refrain from making her regular mortgage payments" because "being 'past due and in default' " was a perquisite for a modification. (Doc. 41, ¶ 41.) To qualify for a HAMP Modification, however, a mortgagor need not be in default, as imminent default is sufficient. (Id. ¶ 42.) Brexendorf maintains that Ken made this false statement to induce her reliance, triggering a purposeful default on her mortgage. (Id. ) Her loss of home equity and "money paid as trial payments" to BOA demonstrate damage from the false statements. (Id. ¶ 43.) At the pleading stage, the Fraud Claim based on the HAMP Eligibility Misrepresentation survives dismissal.
2. Supporting Documents Misrepresentation
When applying for the HAMP modification, Brexendorf sent supporting financial documents to BOA and was told that the documents were not received, incomplete, or not current. (Id. ¶ 47.) Although Brexendorf alleges these statements were false, she fails to support this allegation with specific facts. Instead, she *1266 states only in a conclusory fashion that the statements were false and "BOA employees" knew this. (See id. ). Rule 9(b) requires more and, thus, the Fraud Claim based on the Supporting Documents Misrepresentation is dismissed without prejudice.
3. Trial Payment Omission
On November 20, 2009, BOA allegedly sent Brexendorf a letter informing her that her application was "approved" and instructed her to make trial payments. (Id. ¶ 53.) She complied, making nine Trial Period payments of about $868 in 2009 and 2010 with the belief that such payments were being applied to her mortgage. (Id. at ¶ 56.) Instead, BOA placed the Trial Period payments in an "unapplied account." (Id. ¶ 55.) Brexendorf alleges that "BOA employees" omitted this fact when requesting the trial payments. (Id. ) Absent specific facts about when the alleged omissions were made and by whom, the Trial Payment Omission fall short of the particularity required by Rule 9(b). Hence the Fraud Claim based on the Trial Payment Omission is due to be dismissed without prejudice.
4. Inspection Fee Omissions
Finally, as the Court previously noted, Brexendorf's allegations concerning the Inspection Fee Omissions purportedly reach into 2013 and 2014. (Id. ¶ 61.) Yet again, Plaintiff relies on generalized allegations of BOA's conduct (see id. ), which do not satisfy the particularity required by Rule 9(b). So the Fraud Claim based on timely Inspection Fee Omissions-that is, those after December 1, 2013-is due to be dismissed without prejudice.
D. Failure to State a FDUTPA claim
Brexendorf also asserts that BOA is liable under FDUTPA because it perpetuated a "methodical scheme to avoid its responsibilities under the HAMP Agreement and [incentivized] its employees ... to make knowing material misrepresentations to borrowers." (Doc. 41, ¶ 98.) FDUTPA declares unlawful "unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). BOA contends that this claim must fail because as a federally-regulated bank it is exempted from FDUTPA liability. (Doc. 43, p. 21.)
FDUTPA does not apply to "banks, credit unions, and savings and loan associations regulated by federal agencies." Fla. Stat. § 501.212(4)(c). Contrary to BOA's argument (id. at 22), its status as a federally-regulated bank is not apparent from the Second Amended Complaint. So the Court declines to dismiss the FDUTPA Claim on this basis. See, e.g. , Christie v. Bank of Am., N.A. , No. 8:13-cv-1371-T-23TBM, 2014 WL 5285987, at *4 (M.D. Fla. Oct. 15, 2014) (declining to dismiss a FDUTPA claim against Bank of America, N.A. where the allegations in the complaint were insufficient to determine whether the defendant was a federally-regulated bank).
VI. CONCLUSION
Accordingly, it is ORDERED AND ADJUDGED that:
1. Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 43) is GRANTED IN PART AND DENIED IN PART :
a. The Fraud Claim based on:
i. the HAMP Approval Misrepresentation and the Inspection Fee Omissions before December 1, 2013 is DISMISSED WITH PREJUDICE .
ii. the Supporting Documents Misrepresentation, Trial Payment Omission, and Inspection Fee Omissions after December 1, 2013 is DISMISSED WITHOUT PREJUDICE .
b. The FDUTPA Claim based on:
i. the HAMP Eligibility Misrepresentation, HAMP Approval Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions before December 1, 2013 is DISMISSED WITH PREJUDICE .
*1267 ii. the Inspection Fee Omissions after December 1, 2013 is DISMISSED WITHOUT PREJUDICE .
c. In all other respects, the motion is DENIED .
2. On or before Monday, August 13, 2018 , and consistent with the obligations under Federal Rule of Civil Procedure 11, Plaintiff Carmen Brexendorf may file a third amended complaint that remedies the deficiencies identified in this Order as to only the Fraud and FDUTPA Claims dismissed without prejudice.
DONE AND ORDERED in Chambers in Orlando, Florida, on July 30, 2018.

As in any motion to dismiss, the facts alleged in the Second Amended Complaint (Doc. 41) are taken as true and construed in the light most favorable to Plaintiff. See Hill v. While , 321 F.3d 1334, 1335 (11th Cir. 2003).

"Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc. , 487 F.3d 1340, 1345 (11th Cir. 2007).

In a similar vein, BOA's argument that the Fraud Claim is barred because Brexendorf failed to satisfy an express condition precedent set forth in the mortgage also fails. (Doc. 43, pp. 10-11.) The remaining conduct giving rise to the Fraud Claim-that is, the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions-do not implicate the mortgage.