**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0107n.06

**No. 18-1503**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 06, 2019
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| **MARIA DEL PILAR NINO,** | |
| **Plaintiff-Appellant,** | |
| **v.** | **ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN** |
| **FLAGSTAR BANK, FSB,** | |
| **Defendant-Appellee.** | |

**BEFORE:** **CLAY, McKEAGUE, and WHITE, Circuit Judges.**

**CLAY, Circuit Judge.** Plaintiff Maria Del Pilar Nino appeals the district court's March 30, 2018 order granting Defendant Flagstar Bank, FSB's motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff's amended complaint alleges that Defendant's handling of her mortgage modification (1) violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204; (2) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e); (3) constituted breach of contract under Florida contract law; and (4) constituted breach of the covenant of good faith and fair dealing under Florida contract law. For the reasons set forth below, we **AFFIRM** the district court's dismissal.

## BACKGROUND

### Factual Background

In 2006, Plaintiff obtained a mortgage on real property in Miami, Florida. Sometime between 2006 and 2010, Defendant, a Michigan-based bank, became the holder of Plaintiff's

mortgage. In March 2010, Plaintiff defaulted on the mortgage, and Defendant initiated foreclosure proceedings in Florida circuit court. Over the next three years, Plaintiff worked with Defendant to modify her mortgage and prevent foreclosure.

In December 2011, Defendant approved Plaintiff's entry into a trial period plan ("TPP") under the Home Affordable Modification Program. The TPP provided that if Plaintiff made three trial period payments and submitted documents confirming her eligibility for a TPP, Defendant would send Plaintiff a permanent mortgage modification agreement. However, the TPP further provided that until that time, Plaintiff's existing loan obligations would remain in effect. Plaintiff made all three trial period payments. Accordingly, in March 2012, Defendant told Plaintiff that she had satisfactorily completed the trial period, and that it would send her a permanent mortgage modification agreement.

By May 2013, Plaintiff had not received a permanent mortgage modification agreement. As a result, from June 2013 to August 2013, Plaintiff's attorney reached out to Defendant's attorney on several occasions to inquire about the status of Plaintiff's agreement. In December 2013, Defendant provided Plaintiff with a permanent mortgage modification agreement for her review. Plaintiff promptly signed and returned the agreement. And in March 2014, Defendant executed the agreement and cancelled the foreclosure proceedings on Plaintiff's property.

**Procedural History**

In December 2016, Plaintiff filed a complaint against Defendant in the United States District Court for the Eastern District of Michigan. In February 2017, after Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff filed an amended complaint. Plaintiff's amended complaint alleges that Defendant's handling of her loan modification (1) violated the Florida Deceptive and Unfair Trade Practices

Act, Fla. Stat. Ann. § 501.204, (2) violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, (3) constituted breach of contract under Florida contract law, and (4) constituted breach of the covenant of good faith and air dealing under Florida contract law.

In March 2017, Defendant filed a second motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court referred the motion to a magistrate judge for report and recommendation. In December 2017, the magistrate judge recommended granting Defendant's motion to dismiss in its entirety. And on March 30, 2018, the district court adopted the recommendation, granting Defendant's motion to dismiss because (1) the Florida Deceptive and Unfair Trade Practices Act does not apply to Defendant, (2) Plaintiff's Real Estate Settlement Procedures claim is barred by the statute of limitations, and (3) Plaintiff did not allege consideration for the TPP. The district court also denied Plaintiff leave to further amend the complaint.

This appeal followed.

## DISCUSSION

### I.      Standard of Review

We review a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting all factual allegations as true and construing the complaint in the light most favorable to the non-moving party. *Stimmel v. Sessions*, 879 F.3d 198, 202 (6th Cir. 2018). We review a district court's denial of a motion for leave to amend a complaint for abuse of discretion, which occurs when the district court "appl[ies] a incorrect legal standard, misapply[ies] the correct one, or rel[ies] on clearly erroneous facts." *Pulte Homes, Inc. v. Laborers' Int'l. Union of N. Am.*, 648 F.3d 295, 305 (6th Cir. 2011).

## II.    Analysis

### A.  Florida Deceptive and Unfair Trade Practices Act

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. Ann. § 501.204(1). However, the FDUTPA "does not apply to . . . [b]anks, credit unions, and savings and loan associations regulated by federal agencies." *Id.* § 505.212(4)(c). Defendant is a federally regulated bank. Thus, we hold that the FDUTPA does not apply to Defendant.

To be sure, "[a] review of the governing case law reveals some ambiguity in regard to whether being regulated by a federal agency is sufficient in and of itself to be exempt under [§ 501.212(4)(c)] or if, in addition to being federally regulated, the *activity* at issue must be subject to the federal regulatory authority." *Regions Bank v. Legal Outsource PA*, 2015 WL 7777516, at *5 (Fla. Dist. Ct. App. Dec. 3, 2015) (emphasis added). According to the latter position, the FDUTPA might apply to a federally regulated bank if the *activity* at issue was not banking. *See, e.g.*, *Larach v. Standard Chartered Bank Int'l Ltd.*, 724 F. Supp. 2d 1228, 1238 (S.D. Fla. 2010) (denying a motion to dismiss because the activity at issue was securities brokering); *Diaz v. U.S. Bank*, 2014 WL 4639431, at *5 (S.D. Fla. Sept. 16, 2014) (denying a motion to dismiss because the activity at issue was loan servicing); *U.S. Bank v. Capparelli*, 2014 WL 2807648, at *4–5 (S.D. Fla. June 20, 2014) (denying a motion to dismiss because the activity at issue was loan servicing).

However, "the majority of Florida courts take the former position," that being regulated by a federal agency is sufficient in and of itself to be exempt under § 501.212(4)(c). *Regions Bank*, 2015 WL 7777516, at *4.[1] And that is with good reason—the text of the statute is clear. "By its express terms," the FDUTPA does not apply to federally regulated banks, regardless of the activity at issue. 77 *Wilson*, F. Supp. 3d at 1221.

Moreover, those cases that have held that the activity at issue must also be subject to the federal regulatory authority have done so with little explanation, and in reliance on inapposite precedent. For instance, the court in *Larach* stated only that "[i]t would be premature at the motion to dismiss stage to determine whether [the defendants] were acting as banks or brokers, and thus, would be exempted from application of FDUTPA," and provided no citation for that proposition. 724 F. Supp. 2d at 1238. The court in *Capparelli* cited only to cases analyzing a different provision of the FDUTPA, § 501.212(4)(d). *See* 2014 WL 2807648, at * 5. And the court in *Diaz* cited only to *Larach* and to a case analyzing a different issue, whether the FDUTPA applies to bank subsidiaries, affiliates, or agents. *See* 2014 WL 4639431, at *5. Thus, none of these cases are persuasive, and all are distinguishable.

### B.  Real Estate Settlement Procedures Act

The Real Estate Settlement Procedures Act ("RESPA") requires mortgage loan servicers to respond to a "qualified written request" received from a borrower by acknowledging receipt of the request and taking action on it within 60 business days of receipt. 12 U.S.C. § 2605(e).[2]

---

[1] *See, e.g.*, *Brexendorf v. Bank of Am.*, 319 F. Supp. 3d 1257, 1266 (M.D. Fla. 2018); *Wilson v. EverBank*, 77 F. Supp. 3d 1202, 1221 (S.D. Fla. 2015); *Sovereign Bonds Exch. LLC v. Federal Republic of Germany*, 899 F. Supp. 2d 1304, 1315–16 (S.D. Fla. 2010); *Caban v. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009); *Bankers Tr. Co. v. Basciano*, 960 So. 2d 773, 778 (Fla. Dist. Ct. App. 2007).

[2] Section 2605(e) has since been amended to require a response within 30 business days of receipt, but the version in effect at the time Plaintiff submitted her alleged qualified written requests required a response within 60 business days of receipt.

However, RESPA's statute of limitations provides that "[a]ny action pursuant to the provisions of section 2605 . . . [must] be brought . . . within 3 years . . . from the date of the occurrence of the violation." *Id.* § 2614; *see also Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1041 (E.D. Mich. 2013). Plaintiff's latest alleged qualified written request was sent to Defendant on August 13, 2013, and Defendant's latest alleged violation of § 2605(e) occurred 60 business days thereafter. Yet Plaintiff did not file her complaint until December 19, 2016—more than 3 years from that date. Thus, we hold that Plaintiff's RESPA claim is barred by the statute of limitations.

### C. Florida Contract Law

Under Florida contract law, a valid contract exists if there is "[an] offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). "[T]o constitute valid consideration there must be either a benefit to the promisor or a detriment to the promisee." *In re Standard Jury Instructions—Contract and Business Cases*, 116 So. 3d 284, 305 (Fla. 2013) (citing *Mangus v. Present*, 135 So. 2d 417, 418 (Fla. 1961)).

Plaintiff argues that the TPP was a contract under Florida contract law, whereby Defendant promised to send Plaintiff a permanent mortgage modification agreement if Plaintiff made three trial period payments and submitted documents confirming her eligibility for a TPP. However, in support of that argument, Plaintiff's only allegation with regard to the existence of consideration for the formation of a contract is that she "was forced to declare chapter 13 bankruptcy."[3] (RE 12, PageID # 262; Brief for Appellant at 20.)[4] This allegation is plainly belied by the record. The TPP did not require Plaintiff to file for bankruptcy, nor did Defendant at any time require Plaintiff to

---

[3] Plaintiff's counsel reaffirmed at oral argument that this is Plaintiff's only allegation with regard to consideration.

[4] Except as otherwise indicated, record citations refer to the record in district court action No. 16-cv-14407.

file for bankruptcy. Rather, "Plaintiff's 'forced' bankruptcy appears to be a path chosen to [subordinate a second loan Plaintiff had obtained on the property]," something she was already required to do under her existing loan obligations.[5] (RE 34, PageID # 932; RE 15-3, PageID # 372; RE 15-8, PageID # 415.) Thus, we hold that Plaintiff failed to adequately allege consideration under Florida contract law.

### D.  Leave to Amend

A district court may deny a motion for leave to amend a complaint for a variety of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 640 (6th Cir. 2018). In this case, the district court denied Plaintiff's request for leave to amend the complaint on the grounds that there was undue delay and repeated failure to cure deficiencies.

Specifically, the district court noted that Defendant filed a motion to dismiss in response to Plaintiff's first complaint. That motion asserted the same legal deficiencies in Plaintiff's complaint that remain at issue in this appeal. Yet Plaintiff subsequently filed an amended complaint that failed to address any of these deficiencies. And the district court validly noted that litigation regarding the sufficiency of Plaintiff's complaint has now lasted for over a year, during which Plaintiff has had ample opportunity to amend the complaint, but has failed to do so.

---

[5] As a result, this case is distinguishable from *Pittman v. Experian Information Solutions, Inc.*, in which this Court held that a similar TPP was a contract under Michigan law. 901 F.3d 619, 334 (6th Cir. 2018). This Court in *Pittman* relied on *Wigod v. Wells Fargo Bank*, in which the Seventh Circuit held that another similar TPP was a contract under Illinois law. 673 F.3d 547, 563–64 (7th Cir. 2012). In that case, the plaintiff alleged "cognizable legal detriments" incurred as a result of the TPP, including "open[ing] new escrow accounts" and "undergo[ing] credit counseling." *Id.* at 564. In this case, Plaintiff makes no such allegations.

Accordingly, we hold that the district court's denial of Plaintiff's motion for leave to further amend the complaint was not an abuse of discretion.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's dismissal.